Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| DANIEL DÍAZ FLORES, ET ALS.<br><br>Demandante - Apelante<br><br>v.<br><br>JOAQUÍN RIVERA ALVARADO, ET ALS.<br><br>Demandada - Apelada | TA2026AP00275 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso núm.: CG2023CV04388 (701)<br><br>Sobre: Incumplimiento de Contrato y Daños |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de abril de 2026.

El Tribunal de Primera Instancia ("TPI"), por la vía sumaria, declaró sin lugar una demanda sobre incumplimiento de contrato. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues la teoría de la parte demandante es incompatible con los términos claros del contrato entre las partes, según consignado en una escritura pública.

I.

En diciembre de 2023, el Sr. Daniel Díaz Flores (el "Comprador") y su esposa, la Sa. María Milagros Febus (junto al Comprador, los "Demandantes"), presentaron la acción de referencia, sobre incumplimiento de contrato y daños (la "Demanda"), en contra del Sr. Joaquín Rivera Alvarado (el "Vendedor") y el Sr. Arístides Ramón (el "Notario").

Los Demandantes alegaron que, por medio de una escritura pública autorizada en el 2013 por el Notario (la "Escritura"), adquirieron un "solar" en Cidra (la "Propiedad" o el "Solar"). El Comprador afirmó que "adquirió" el Solar "con la intención de

realizar una propiedad residencial". Alegó que el Vendedor se había "comprometi[do] a entregar los documentos que obliga la ley para … construir su propiedad e inscribir la misma en el Registro de la Propiedad." Además, sostuvo que el Vendedor "se comprometió a realizar un camino o acceso al terreno, con la correspondiente instalación de postes de luz y tubería de agua."

El Comprador alegó que "comenzó a gestionar la construcción del camino y acceso al terreno", pero entonces "se percató que no cuenta con los documentos legales necesarios para cumplir con la inscripción al Registro de la Propiedad".

Luego de que se emplazara al Vendedor y este no compareciera, el TPI le anotó la rebeldía. Mientras tanto, los Demandantes desistieron con perjuicio de su reclamación contra el Notario.

Luego de que los Demandantes solicitaran la resolución sumaria de la Demanda, mediante una Sentencia notificada el 19 de febrero de 2026 (la "Sentencia"), el TPI declaró sin lugar la Demanda.

El TPI determinó que, según la Escritura, los Demandantes adquirieron del Vendedor su "participación abstracta" en la Propiedad, pues de la Escritura "surge que la propiedad en cuestión pertenece a una sucesión con varios herederos y que la parte demandada le estaba vendiendo a la parte demandante su **participación abstracta** en dicho inmueble". El TPI subrayó que, de la Escritura, surgía claramente que el Comprador adquiría únicamente la participación alícuota del Vendedor y que adquiría en capacidad de comunero de la Propiedad. El TPI razonó que el Comprador "sabía que la propiedad no estaba a nombre de la parte demandada … sino que pertenecía a varios comuneros, por lo que era imposible inscribir una porción de dicho terreno a su nombre".

Finalmente, el TPI observó que de la Escritura "no se desprende que la parte demandada se hubiese obligado a gestión

adicional que no fuese a ceder ... su participación" en la Propiedad. Por tanto, al determinar que el Comprador alega "hechos que van en total contravención" a lo estipulado en la Escritura, el TPI concluyó que no se demostró que hubiese incumplimiento de contrato por el Vendedor.

Inconforme, el 17 de marzo, los Demandantes presentaron el recurso de referencia. Arguyeron que, a la luz de la rebeldía del Vendedor, el TPI venía obligado a aceptar como ciertas las alegaciones de la Demanda en cuanto al incumplimiento del Vendedor con los supuestos acuerdos sobre la construcción de un camino, postes y tubería de agua, y sobre la entrega de "los documentos que obliga la ley" para que el Comprador pudiese construir en la Propiedad e inscribirla en el Registro de la Propiedad.

Según lo autoriza la Regla 7(B)(5) del Reglamento de este Tribunal, resolvemos sin trámite ulterior.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.*, 193 DPR 100, 109 (2015). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Si se concluye que "existe una controversia real y sustancial sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. Íd.

La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, indica los requisitos que tanto el proponente de la sentencia sumaria, como al que se opone a la misma, deben satisfacer. La moción de sentencia sumaria debe contener: una exposición breve

de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b).

Así pues, la parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d). De igual forma, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". Íd.

III.

El Artículo 1044 del Código Civil[1], 31 LPRA sec. 2994, dispone que "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los

---

[1] Hacemos referencia al código vigente a la fecha de los hechos.

mismos". Por su parte, el Artículo 1206 del referido cuerpo legal aclara que el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio. 31 LPRA sec. 3371.

Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 LPRA 3375. Es decir, que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil, 31 LPRA sec. 3451. Así, una vez perfeccionado un contrato, sus disposiciones tienen fuerza de ley entre las partes, y tienen que ser cumplidas. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 34 (2010).

Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 LPRA sec. 3471; *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Ahora bien "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas". Art. 1233 del Código Civil, 31 LPRA sec. 3471; *Suárez Figueroa v. Sabanera Real, Inc.,* 173 DPR 694, 711 (2008). En consecuencia, en aquellas circunstancias en que no se pueda determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas contractuales será necesario recurrir a una interpretación subjetiva; esto es, analizar los actos anteriores, coetáneos y posteriores al perfeccionamiento de los contratos. Art. 1234 del Código Civil, 31 LPRA sec. 3472; *Suárez Figueroa, supra; S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 726 (2001).

Por otro lado, el Artículo 1236 del Código Civil, 31 LPRA sec. 3474, aclara que "[s]i alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto". Es decir que, "si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación tiene que ser cónsona con el principio de la buena fe y no puede conllevar a resultados incorrectos, absurdos e injustos". *S.L.G. Irizarry*, 155 DPR a la pág. 727.

IV.

Al igual que el TPI, concluimos que procedía declarar sin lugar la Demanda. De la Escritura surge claramente que lo único que se transmitió a los Demandantes fue la participación abstracta que el Vendedor pudiese tener en la Propiedad, de forma que los Demandantes, en sustitución del Vendedor, advinieron comuneros de la Propiedad junto a los demás integrantes de una sucesión. En efecto, en la Escritura se hizo constar que "la participación adquirida es abstracta e indefinida" y que los compradores "aceptan y reconocen que acaban de adquirir en capacidad de comuneros".

Por tanto, no es viable la causa de acción principal de los Demandantes, pues la misma parte de la premisa de que el Vendedor les representó algo completamente opuesto a lo que la Escritura claramente hace constar. Puesto de otra forma, si en una escritura se estipula que se vende "A", no es viable una causa de acción predicada en que el vendedor representó que, en realidad, se estaba vendiendo "B".

Por las mismas razones, tampoco es compatible con los términos de la Escritura un supuesto acuerdo a los efectos de que el Vendedor realizaría gestiones para que la Propiedad quedase inscrita a nombre de los Demandantes. De forma similar, tampoco es plausible la alegación en cuanto a un supuesto acuerdo mediante el cual el Vendedor quedaría a cargo de la construcción de un

camino, postes y tuberías en la Propiedad. Adviértase que este supuesto acuerdo no se incluyó en la Escritura; sin embargo, por su naturaleza sustancial, y por el hecho de que el Vendedor era solo un comunero de la Propiedad (y luego quedaría totalmente ajeno a la misma), dicho compromiso, de existir, se hubiese incluido en los acuerdos plasmados en la Escritura.

V.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones